# William E. S. Bunn and George W. Lyon v. Jacob Schnellbacher and Isaac N. Feger.

1. FRAUD—*False Representations as to Price in the Purchase of Real Estate.*—Where two persons falsely represented to two other persons that the purchase price of a tract of land was $14,000, to which each of the four was to contribute an equal share, when in truth the purchase price was only $10,500, and such persons were induced by such representations to pay more than their shares of the purchase money, the transaction was held to constitute fraud by means of false representations.

**Bill for Relief.**—Appeal from the Circuit Court of Peoria County; the Hon. THOMAS M. SHAW, Judge, presiding. Heard in this court at the December term, 1894. Affirmed in part and reversed in part. Remanded for further proceedings, etc. Opinion filed May 28, 1895.

GEORGE B. FOSTER, L. J. CARLOCK and C. A. WEIBERG, attorneys for appellants.

JACK & TICHENOR, attorneys for appellees.

MR. JUSTICE CARTWRIGHT DELIVERED THE OPINION OF THE COURT.

The controversy in this case arose out of the purchase of a tract of land containing about fourteen acres, known as Selby Park, adjoining the city of Peoria on the south, in which purchase the appellees, Jacob Schnellbacher and Isaac H. Feger, by their bill of complaint, charged that they were defrauded by the appellants, William E. S. Bunn and George W. Lyon, their associates in the purchase, who bargained for the tract, by false representations as to the amount paid. The charges were denied, and the cause was referred to the master, who reported in favor of appellees, and with a slight modification of his findings as to the amount, the court confirmed his report and decreed accordingly.

The fraud charged consisted of alleged false representations by the defendants, William E. S. Bunn and George W. Lyon, that the purchase price of the tract of land was $14,000, to which each of the four was to contribute an

equal share, when in truth the purchase price was only $10,500, and that by such false representations the complainants were induced to pay more than their shares of the purchase money. It was shown on the hearing that said Bunn and Lyon had procured a written agreement on September 19, 1887, from James Selby, for a conveyance to them from said Selby and Michael D. Spurck, the owners, of the tract of land for $14,000; that Selby at the same time gave them a writing that there was to be a rebate of $3,500 from the price named in the contract; that they then paid Selby $500 on the purchase, and afterward tried to organize a company of fourteen persons to pay $1,000 each and buy the land for a race track, of which company complainant, Schnellbacher, agreed to become a member; that said scheme failed, and Bunn and Lyon being unable to meet a payment coming due December 19, 1887, obtained from Selby an extension for thirty days; that afterward complainants agreed with Bunn and Lyon to each take a one-fourth interest in the land, and on February 1, 1888, by agreement of the parties, Selby and Spurck conveyed the land to the complainant Schnellbacher in trust for himself and the complainant Feger and said Bunn and Lyon, each owning one-fourth interest, and Schnellbacher as such trustee executed four notes of $2,000 each to Selby and Spurck for deferred payments and secured the same by mortgage on the tract; that the balance of the purchase price was $2,500, to be paid in cash, and that complainants each paid $1,500, making $3,000, out of which the sum of $2,500 was paid to Selby and Spurck, and Bunn and Lyon paid nothing at that time, but kept $500 of complainants' money. Selby and Spurck retained $225 out of the payment of $500 in September, for interest accrued, and accounted to Bunn and Lyon for the balance.

The complainants never knew anything about the contract made in September for a conveyance to Bunn and Lyon, or the separate agreement for a rebate until the facts were developed on the hearing of this case. The testimony of complainants was that Bunn and Lyon applied to them

to join in the purchase of the premises from Selby and Spurck, and represented that the purchase price to be paid said Selby and Spurck was $14,000, of which $6,000 was to be paid in cash, and $8,000 was to be secured on the property, and that in the belief that such representations were true they each agreed to take a one-fourth interest, and paid their money, supposing that Bunn and Lyon were paying the same. Bunn and Lyon, while not claiming that they disclosed to complainants the existence of any contract or the amount of the purchase price, denied making any misrepresentation as to the price, and claimed that they merely sold for themselves one-half of the land to complainants at a profit. All the circumstances, however, tend to corroborate complainants and Adolph Barnewalt, who was to have taken an interest and whose place was taken by complainant Feger, and who testified that Bunn and Lyon represented to him that they had an option on the tract for $14,000, and proposed to let him have one-fourth for $3,500. We think that the fraud was proved and that the master and court were right in so finding.

The complainant Schnellbacher held the title to the tract of land as trustee for himself and his associates, and rented it, and about three years after the purchase it was laid out and platted into 124 lots. There was a division of the lots among the owners, and each of them assumed one-fourth of the incumbrance. Said George W. Lyon had sold his interest November 9, 1889, to his father, the defendant, Aaron Lyon. In pursuance of the arrangement for division, Schnellbacher conveyed to said Aaron Lyon and the other parties the lots set off to them in severalty, and each executed a mortgage to Selby and Spurck for his share of the incumbrance. This closed out the transaction and severed all relations of the parties.

There is some discussion whether the arrangement created a partnership, but we deem it immaterial whether the relation of partners existed or not. The purchase was for the mutual benefit of the parties, and the negotiation was carried on by Bunn and Lyon alone, professing to their associates

to be acting for all. There was actual fraud by means of false representations, and it was not necessary that complainants should be partners with Bunn and Lyon to enable them to call for an accounting on account of such fraud. Complainants had no knowledge of the true consideration paid for the premises until 1892, when they directed counsel to file the bill in this case.

It is argued that the transaction on the part of Bunn and Lyon was legitimate business and honest enterprise, but false statements to induce investment of money of the character here shown can scarcely be so classed, and we think the court was right in requiring them to refund their gains acquired by such means. But we see no good reason for subjecting the lots conveyed to the defendant, Aaron Lyon, to sale in satisfaction of complainant's claim against George W. Lyon who was guilty of the fraud. Aaron Lyon did not participate in the purchase or in the fraud and knew nothing about it. He took the property from his son in payment of indebtedness due him and surrendered notes of his son, and the lots were conveyed to him by the trustee. He was a *bona fide* purchaser for a valuable consideration without notice that any fraudulent representation had been made, and no reason occurs to us why he should be compelled to make the representation good. The averments of the bill that he paid no consideration for the lots conveyed to him and that they were subject to complainant's equities were not supported by any proof, but were disproved by the evidence.

The decree will be reversed as far as it charges payment of the amount found due upon lands of the defendant, Aaron Lyon, and authorizes a sale of the same, and will be affirmed in all other particulars. The cause is remanded for further proceedings in accordance with this opinion.